PAUL MARSH, INC., Plaintiff,

v.

S.S. JOHANN BLUMENTHAL, her engines, boilers, etc., Johann K. Blumenthal Reederei, KG Panatlantic GmbH & Co., and Cargo Lines, Ltd., Defendants.

No. 75 Civ. 538.

United States District Court, S. D. New York.

July 19, 1978.

Donovan, Maloof, Walsh & Kennedy, New York City, for plaintiff; John T. Lillis, Jr., New York City, of counsel.

Albert A. Silbermann, New York City, for defendant KG Panatlantic GmbH & Co.

Haight, Gardner, Poor & Havens, New York City, for defendant Cargo Lines, Ltd.; Vincent M. DeOrchis, New York City, of counsel.

OPINION

ROBERT J. WARD, District Judge.

This suit in admiralty was brought by plaintiff Paul Marsh, Inc. against the vessel which carried its cargo, the S.S. JOHANN BLUMENTHAL, her owner, Johann K. Blumenthal Reederei, the shipper, KG Panatlantic GmbH & Co., and the vessel's charterer, Cargo Lines, Ltd. The cargo in question consisted of 63 cartons of hog bristles which was shipped from Hamburg, West Germany via Antwerp consigned to plaintiff at New York. It was never delivered, most of the shipment having been washed overboard when the 40 × 8 foot aluminum container in which it was stowed ("plaintiff's container") was demolished after being struck by a wave during a storm in the North Atlantic.

The vessel, a container ship of 2,228 tons, sailed from Antwerp in late January 1974. Plaintiff's container was stowed on the main deck. It was the forward outboard

container on the starboard side, top tier. In this position, the container was exposed to any seas which broke over the main deck. Bad weather was encountered beginning on January 22, 1974, as a result of which plaintiff's container was somewhat dented. According to the uncontroverted deposition testimony of the master of the vessel, Captain Konrad Bechtold, the destruction of plaintiff's cargo was caused by one big wave, ten meters high, which struck plaintiff's container on January 25, 1974 during a severe storm with winds of 9 to 10 on the Beaufort Scale. The force of the wave demolished the container except for the floor and some stanchions and washed most of the container and its contents overboard. According to the survey of Captain Peter N. Beckett, the remainder of the contents, found either scattered about the deck or under other containers, was waterlogged, completely damaged, and of no commercial value. Captain Bechtold testified that although he had experienced comparable winds during other winter North Atlantic crossings aboard the vessel, this storm was more severe than previous ones because the winds were accompanied by bigger waves and bigger swells than on earlier voyages.

■ A shipper of goods by common carrier makes out a *prima facie* case for recovery for damaged cargo under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300–1315, by showing delivery to the carrier in good condition and damage at outturn. *Madow Co. v. S.S. "Liberty Exporter"*, 569 F.2d 1183 (2d Cir. 1978). "Once a prima facie case has been established, the burden of proof is on the defendants to establish that the damage was not due to their negligence, or that it was occasioned by one of the 'excepted causes' in Section 1304(2) of COGSA." *See Dempsey & Associates, Inc. v. S.S. "Sea Star"*, 461 F.2d 1009, 1015 (2d Cir. 1972); *accord, Madow Co. v. S.S. "Liberty Exporter", supra* at 1185.

The parties stipulated that the carrier and the shipper, upon receipt of the cargo; issued clean bills of lading. Under § 1303(4) of COGSA, these clean bills of lading are *prima facie* evidence that the carrier received the shipment in good condition. *Dempsey & Associates, Inc. v. S.S. "Sea Star", supra*. Since no evidence to the contrary was introduced, the Court finds that the shipment was in good condition when loaded aboard the S.S. JOHANN BLUMENTHAL.

Once plaintiff has proven a *prima facie* case, the burden of proof shifts to the defendants to prove that the loss was not due to their negligence, or that it was occasioned by one of the "excepted causes", within § 1304(2) of COGSA. *See J. Gerber & Co. v. S.S. "Sabine Howaldt"*, 437 F.2d 580, 584 (2d Cir. 1971). It is defendants' position that the destruction of plaintiff's cargo was due not to their negligence, but rather to the big wave which they contend constituted a peril of the sea, one of the excepted causes within § 1304(2). The Second Circuit has defined perils of the sea as

> those perils which are peculiar to the sea, and which are of an extraordinary nature or arise from irresistable force or overwhelming power, and which cannot be guarded against by the ordinary exertions of human skill and prudence.

*The Giulia*, 218 F. 744, 746 (2d Cir. 1914). A single wave can constitute a peril of the sea. *Automobile Insurance Co. v. Hart-Wood Lumber Co.*, 105 F.2d 387 (9th Cir. 1939).

Plaintiff argues that defendants cannot avail themselves of the defense of peril of the sea because the loss could have been "guarded against by the ordinary exertions of human skill and prudence." *The Giulia, supra*. According to plaintiff, it was negligent to stow plaintiff's aluminum container in the position where it was stowed as that was the place most likely to be struck by heavy seas in the event of a storm. Plaintiff contends that the loss could have been avoided by simply stowing a steel container in place of plaintiff's container and by stowing plaintiff's container either down in

the cargo hold or on deck surrounded by other stronger steel containers.[1]

The Court agrees with plaintiff that the stowing of plaintiff's container in the forward outboard position on the starboard side, top tier, was imprudent. Captain Bechtold testified in his deposition that in his opinion the placement of plaintiff's container was not good practice and not good seamanship. The Captain indicated that he personally had no control over the loading, which was done by stevedores, but that if he had been in charge, he would never have placed the container in such a "dangerous place" where it was "open to the seas." Rather, he would have placed it in the hold, or, if the hold were already filled to capacity, "in the lower tier on deck, right in the middle," surrounded on each side and on top by steel containers. While the Captain also testified that he thought the number of aluminum containers as compared to steel containers on the vessel was such that it was not possible to place all the aluminum containers in the hold, and it appears that there also may not have been enough steel containers to surround the aluminum containers on all sides, the Court believes that, at the very least, the stowage should have been arranged so that steel rather than aluminum containers were placed in the most vulnerable outboard positions.

■ This finding does not end the matter, however. Defendants argue that even if they were negligent in failing to direct the stevedores to stow plaintiff's container in a better-protected place, their negligence was not the proximate cause of the damage to plaintiff's cargo because the force of the extraordinarily heavy seas driven by winds of gale force would have done comparable damage to cargo in a steel container. The Court finds that the preponderance of the evidence supports defendants' position.

To begin with, the Captain testified that in his opinion the "same thing" would have happened to the contents of a steel container stowed in this "dangerous," "first unprotected" position. Although the Captain hesitated to predict that in the case of a steel container, the whole container and its contents would have washed away, he said he was sure there would have been "big damage." Since even the cargo which was found on board after the storm was completely ruined, the Court believes that the Captain's statement that a steel container and its contents might not have been washed away does not detract from his opinion that the cargo in a steel container would have suffered comparable damage from the big wave. The Court credits the Captain's testimony, not only because of his extensive experience as a seaman, but also because, as demonstrated by his statements with reference to the imprudent positioning of plaintiff's container, his testimony was far from uniformly favorable to his employer.

Additionally, the Captain testified that the wave which caused the damage was ten meters high and resulted from winds of force 9 to 10, and that on previous voyages, winds of comparable magnitude were accompanied by waves of only eight meters. The force of the wave is also evidenced by the damage done to five other containers. According to the surveys and the Captain's testimony, at least two of these containers, located in less dangerous positions, were heavily damaged. The survey of M.F. Horvath Associates Inc. indicated that the seas and wind were directly responsible not only for the damage to plaintiff's container, but also for the smashing of the front panel of a container stowed in the outboard position, portside, lower tier. The survey indicates that the contents of this container, which

---

1. Plaintiff does not appear to contest the seaworthiness of the vessel. While the S.S. JOHANN BLUMENTHAL was described by its Captain as a "very small ship" for the North Atlantic trade, the Court finds, on the basis of the record before it, that the vessel was reasonably fit to carry the cargo which it had undertaken to transport and was, therefore, seaworthy. *See In the Case of the Sylvia*, 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241 (1898).

consisted of metal drums of chemicals, were heavily rusted and dented, with a number crushed and with their heads off. Furthermore, the vessel itself suffered substantial structural damage. The spare bower anchor, originally secured by steel bar clamps, was torn loose, coming to rest against the base of the foremast, denting and fracturing the mast at a point one inch above the deck. The pipe rail on the after end of the forecastle was also heavily bent and broken with three stanchions bent and/or broken. In addition, several frames on the starboard side of the vessel were damaged. During eight previous winter crossings of the North Atlantic, the vessel had not sustained damage nor had any container been lost.

On the basis of the foregoing, the Court concludes that the force of the big wave was so powerful that even a steel container would have been severely damaged and its contents destroyed, and thus that the loss was not caused by negligent stowage, but rather by a peril of the sea.[2] Accordingly, the complaint is dismissed.

The foregoing constitutes the findings of fact and conclusions of law of the Court for the purposes of Rule 52, Fed.R.Civ.P.

Settle judgment on notice.

2. Plaintiff asserts that if defendants proved a peril of the sea, they must distinguish between the damage caused by such peril and the damage caused by the unexcepted cause of improper stowage. *Schnell v. The Vallescura*, 293 U.S. 296, 306, 55 S.Ct. 194, 79 L.Ed. 373 (1934); *J. Gerber & Co. v. S.S. Sabine Howaldt, supra*, 437 F.2d at 588. Although plaintiff's container had previously suffered some damage due to bad weather on January 22, 1974, there was no direct evidence that improper stowage caused any damage to the cargo itself on that date. More importantly, the Captain testified that, in his opinion, the prior damage to plaintiff's container did not contribute to the loss of plaintiff's cargo on January 25, in that the big wave would have destroyed plaintiff's container and its contents even if the container had not already been damaged. The Court finds that the record as a whole, and specifically the damage to the vessel and to five other containers, supports the Captain's opinion. Accordingly, the Court holds that the entire loss was caused by a peril of the sea. *See Lekas & Drivas, Inc. v. Gouladris*, 306 F.2d 426, 430 (2d Cir. 1962).